Marshall, Ch. J.,
delivered the opinion of the-court. — *In this case, a preliminary question has been made by the counsel for the plaintiffs, which ought not to be disregarded. As the parties interested, except the owners of the cargo of the Eirm, are not Americans, a doubt has been suggested respecting the jurisdiction of the-court, and upon a reference to the authorities, the point does not appear to-have been ever settled. These doubts seem rather founded on the idea, that upon principles of general policy, this court ought not to take cognisance of a case entirely between foreigners, than from any positive incapacity to do-so. On weighing the considerations drawn from public convenience, those in favor of the jurisdiction appear much to overbalance those against it, and it is the opinion of this court, that, whatever doubts may exist in a case-where the jurisdiction may be objected to, there ought to be none, where the-parties assent to it.
The previous question being disposed of, the court will proceed to consider the several cases which have grown out of the libel filed in the district, court.
The first to be decided is that of the master of the Eirm, who, by the sentence of the circuit court, was declared to have forfeited his right to salvage, by having embezzled a part of the cargo of the Blaireau. The fact is-not contested, but it is contended, that the embezzlement, proved in the cause, does not affect the right of the captain to salvage. The arguments-in support of this position shall very briefly be reviewed. It is insisted, that the embezzlement was made, after the vessel was brought into port, and this seems to be considered as a circumstance material to the influence which the embezzlement ought to have in the case. So far as respects the fact,, the evidence is, that the articles were brought on board the Eirm when the Blaireau was found at sea, and the fraud was detected in the port of Baltimore. When the concealment took place, does not appear, but it would be-straining very hard to presume that it took place, after arriving in port. It. *158 is not, however, perceived, that this need be the subject of very minute inquiry, since the fact must have occurred before he parted with the possession acquired by the act, on the merit of which his claim for .salvage is founded.
It is also stated, that this court has no jurisdiction of the crime committed by the master, and cannot notice it, even incidentally. If it was intended merely to prove that this court could not convict Captain Mason of felony, and punish him for that offence, there certainly could never have been a doubt entertained on the subject; but when it is inferred from thence, that the court can take no notice of the fact, the correctness of the ‘'conclusion is not perceived. It is believed to be universally true, that when a claim of any sort is asserted in court, all those circumstances which go to ■defeat the claim, and to show that the person asserting it has not a right to recover, may and ought to be considered. The real question, therefore, is, whether the claim for salvage is affected by the act of embezzlement; and if it is, the incapacity of this court to proceed criminally against the master, forms no objection to their examining a fact which goes to the very foundation of his right.
The legal right of the salvors is insisted on, and it is said, that in trover for the ship and cargo, by the owners, salvage would be allowed to those who had rendered the service, and then openly converted them to their own use. Yet the jury, trying the action, would determine on the right to salvage, and would inquire into any fact which went to defeat that right. Whatever shape, then, may be given to the question, it still resolves itself into the inquiry, whether the embezzlement of part of the cargo does really intermingle itself with, and infect, the whole transaction, in such a manner as to destroy any claim founded on it.
The counsel for this plaintiff contends, that the merits of Captain Mason, as a salvor, are not impaired by the act charged upon him, because a crime *s 110 °®se^ *against a debt, and the claim for salvage is in nature of a debt. This leads to an inquiry into the principles on which salvage is allowed. If the property of an individual on land be exposed to the greatest peril, and be saved by the voluntary exertions of any persons whatever ; if valuable goods be rescued from a house in ñames, at the imminent hazard of life by the salvor, no remuneration in the shape of salvage is allowed. The act is highly meritorious, and the service is as great as if rendered at sea. Yet the claim for salvage could not, perhaps, be supported. It is certainly not made. Let precisely the same service, at precisely the same hazard, he rendered at sea, and a very ample reward will be bestowed in the courts of justice.
If we search for the motives producing this apparent prodigality, in rewarding services rendered at sea, we shall find them in a liberal and enlarged policy. The allowance of a very ample compensation for those services (one very much exceeding the mere risk encountered, and labor employed in ■effecting them), is intended as an inducement to render them, which it is for the public interests, and for the general interests of humanity, to hold forth to those who navigate the ocean. It is perhaps difficult, on any other principle, to account satisfactorily for the very great difference which is made between the retribution allowed for services at sea and on land ; neither *159 ■will a lair calculation of the real hazard or labor, be a foundation for such a difference ; nor will the benefit received always account for it.
If a wise and humane policy be among the essential principles which induce a continuance in the allowance of that liberal compensation which is made for saving a vessel at sea, we must at once perceive the ground on which it is refused to the person whose conduct ought to be punished instead of being rewarded. That same policy which is so very influential in producing the very liberal allowances made by way of salvage, requires that those allowances should be withheld from persons, who avail themselves of the opportunity furnished *them by the possession of the property of another, to embezzle that property. While the general interests of society require that the most powerful inducements should be held forth to men to save life and property about to perish at sea, they also require that those inducements should likewise be held forth to a fair and upright duet with regard to the objects thus preserved. This would certainly justify •the reduction of the claim to a bare compensation, on the principles of a real ..quantum meruit; and the losses in the cargo, which may be imputed to the master, would balance that account, if, as is contended by his counsel, the court could not, on principles generally received, consider the act of embezslement as a total forfeiture of all right to salvage.[1]
But the case of a mariner, who forfeits his rights to wages, by embezzling .any part of the cargo, is precisely in point. That case stands on the same principles with this, and is a full authority for this, since it cannot be denied, that the right to salvage is forfeited by the same act that would forfeit the right to wages. In the case of Mr. Stevenson, the fact is not clearly aseertained. If the embezzlement was fixed upon him, he, as well as the master, ■ought to forfeit his salvage. But it is not fixed. Yet there are cireumstances in the case, which, if he stands acquitted of the charge of unfairness, do certainly so implicate him in that of carelessness, as to destroy his pretensions to superior compensation, and reduce his claim to a level with that ■of a common mariner.
The decree of the circuit court being approved, so far as respects Captain Mason and Mr. Stevenson, the general rate of salvage allowed by that •decree is next to be considered. There is certainly no positive rule which ■governs absolutely the rate of salvage. Yet in fixing it, the common usage of commercial nations, and especially of those whose subjects are interested in the particular case, ought unquestionably to be regarded. In France, it appears that a service like that rendered the owners of the *Blaireau would have been compensated with one-third of the value of the vessel and cargo. In England, the principle of reciprocity, if not adopted, is much respected, and to judge from the tenor of their cases on this subject, it is fairly presumable, that the salvage which would be allowed in an English court, in a case like the present, would not greatly vary from that which appears to be made by the ordinances of France.
This is unquestionably a case of great merit, and a very liberal salvage •ought to be allowed. Yet that allowed both by the district and circuit courts, appears to exceed any sum which those principles, which ought to be *160 resorted to as guides in the ease, will justify. Among the various adjudications of the courts of admiralty in England, to which country the salvors belong, no one has been found where so large an allowance has been made j and in France, the nation of the owners oi the property saved, a positive ordinance is understood to regulate this subject, and to fix the salvage at one-third of the gross value of what has been preserved.
Taking the whole subject into consideration, the court is disposed to reduce the rate of salvage, and to allow about two-fifths instead of three-fifth® to the salvors. The vessel and cargo will then be really charged, in consequence of the savings produced by the forfeiture of the master’s claim, and the reduction of those of the mate and Mr. Christie, with not more than one-third of the gross value of the property.
In the distribution of this sum, the court does not entirely approve the decree which has been rendered in the circuit court.
The proportion allowed the owners of the Firm and her cargo, is not equal to the risk incurred, nor does it furnish an inducement to the owner® of vessels to permit their masters to save those found in distress at sea, in any degree proportioned to the inducements offered to the masters and crew. The same policy ought to extend to all concerned, the same rewards for a service designed to be encouraged, and it is surely no reward to a man, made his own insurer without his own consent, *to return him very little more than the premium he had advanced. The common course of decisions, too, has established a very different ratio for the distribution of salvage money, and the court is of opinion, that those decisions are founded on substantial considerations.
The owners of the vessel and cargo, in this case, will be allowed one-third of the whole amount of salvage decreed, which third is to be divided between them in the proportion established in the district court, it being, in our opinion, very clear, that the owner of the vessel continued to risk the freight after, as much as before, the assent of Mr. Christie to the measures necessary for saving the Blaireau. That assent could only be construed, to charge him with the hazards to be encountered by the cargo, and not to vary the contract respecting the freight.
The proportions established by the decree of the circuit court between those who navigated the Firm, and those who navigated the Blaireau, and between the individuals in each ship, are all approved with this exception. The case exhibits no peculiar merits in Mr. Christie, and therefore, his allowance is not to exceed that of a seaman on board that vessel.
On the rights of Toole and the apprentices, this court entirely concurs in opinion with the district and circuit courts. There was certainly no individual who assisted in bringing in the Blaireau, that contributed so much to her preservation as Toole. Every principle of justice, and every feeling of the heart, must arrange itself on the side of his claim. But it is contended, that the contract he had entered into bound him to continue hi® endeavors to bring the vessel into port, and that the principles of general policy forbid the allowance of salvage to a mariner belonging to the ship which has been preserved.
*The claims upon him, on the ground of contract, are urged with a very ill grace indeed. It little becomes those who devoted him to the waves, to set up a title to his further services. The master, who wa® *161 intrusted by the owner wi ih power over the vessel and her crew, had discharged him from all further duty under his contract, so far as any act whatever could discharge him, and it is not for the owner now to revive this abandoned claim. Those principles of policy which withhold from the mariners of a ship their wages, on her being lost, and which deny them salvage for saving their ship, however great the peril may be, cannot apply to a case like this. There is no danger that a single seaman can be induced, or enabled, by the prospect of- the reward given to Toole, to prevail on the officers and crew of a vessel to abandon her to the mercy of the waves, for the purpose of entitling the person who remains in her to salvage, if she should be fortunately preserved.
The claim of the master to the salvage allowed his apprentices, is one which the court feels no disposition to support, unless the law of the case be clearly with him. The authorities cited by his counsel do not come up to this case. The right of the master to the earnings of his apprentice, in the way of his business, or of any other business which is substituted for it, is different from a right to his extraordinary earnings, which do not interfere with the profits the master may legitimately derive from his service. Of this latter description is salvage. It is an extra benefit, the reception of which does not deduct from the profits the master is entitled to from his service. But the case cited from Hobinson, where salvage was actually decreed to an apprentice, is in point. The counsel does not appear to the court to construe that case correctly, when he says that it does not determine the right as between the master and the apprentice. The fair understanding of the case is, that the money was decreed to the apprentice, and was to be paid for his benefit. Considering the case strictly on principle, that portion of the salvage allowed ought to be paid to the master which would compensate him for having risked the future service of his apprentice ; but as this would not amount to a very considerable sum, and as a liberal salvage has *already been decreed to the master, this further allowance will not be made in this case.
Upon these principles, the following decree is to be entered : “ This cause came on to be heard, on the transcript of the record of the circuit court, and was argued by counsel, on consideration whereof, this court doth reverse the sentence of the circuit court, so far as the same is inconsistent with the principles and opinions hereinafter stated : This court is of opinion, that too large a proportion of the net proceeds of the ship Blaireau and her cargo has been allowed to the salvors, and that $21,400 is a sufficient retribution for the service performed, which sum is decreed to the claimants (except Captain Mason, whose rights are forfeited by embezzling a part of the cargo), in full of their demands. In distributing the sum thus allowed, this court is of opinion, that the owners of the Firm and her cargo ought to receive one-third of the whole amount thereof, of which one-third, the proportion of the owner of the vessel ought to be to that of the owner of the cargo, as the value of the vessel and freight is to the value of the cargo ; that is, as 18 to 4. It is further the opinion of the court, that the remaining two-thirds of the salvage allowed, ought to be divided between those who navigated both the Firm and the Blaireau (excluding Captain Mason), in the proportions directed by the circuit court, with this exception, that the sum *162 to be received by Charles Christie is to be the same with that received by a seaman on board the Blaireau. In everything not contrary to the principles herein contained, the decree of the circuit court is affirmed, and the cause is remanded to the said circuit court to be further proceeded in, according to the directions given. The parties are to pay their own costs.”

 See The Minnie Miller, 6 Ben. 117; The Louisa, 2 W. Rob. 26; The John and Thomas, 4 Hagg. 157 n.